1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT

8 NORTHERN DISTRICT OF CALIFORNIA

9

10 GEORGE MARTIN,                    Case No. 17-01690 BLF (PR)

11       Plaintiff,

12                                   **ORDER GRANTING**
                                     **DEFENDANTS' MOTION**
13                                   **FOR SUMMARY**
     v.                              **JUDGMENT; GRANTING**
14                                   **MOTION TO RESUBMIT**
15 W. MUNIZ, et al.,                 **EXHIBITS**

16       Defendants.

17                                   (Docket Nos. 149, 167)

18

19

20       Plaintiff, a California inmate, filed the instant *pro se* civil

rights action pursuant to 42 U.S.C. § 1983 against prison officials

21

at the Salinas Valley State Prison ("SVSP").  Plaintiff's second

22

amended complaint ("SAC") is the operative complaint in this

23

matter.   Dkt. No. 129.[1]  After screening the SAC, the Court

24

ordered the matter to proceed on the Eighth Amendment claim

25

26

27 [1] All page references herein are to the Docket (ECF) pages shown
in the header to each document and brief cited, unless otherwise
28 indicated.

United States District Court
Northern District of California

with respect to Plaintiff's pain management, including the denial of corrective surgery to address the chronic pain, against Defendants Dr. Kim R. Kumar, Dr. Darrin M. Bright, Tuan Anh Tran (Pharmacist), Dr. Edward Miles Birdsong, and Dr. Jennifer Villa at SVSP.  Dkt. No. 137 at 7.[2]

Defendants filed a motion for summary judgment pursuant to Rule 56 on the grounds that there is no genuine issue as to any material fact, that they are entitled to judgment as a matter of law, and they are also entitled to qualified immunity.  Dkt. No. 149. In support, Defendants filed a declaration by Defendant Dr. Bright and exhibits.  Dkt. Nos. 149-1, 149-2.  Plaintiff filed opposition along with his declaration and exhibits in support.[3]

---

[2] In the same order, the Court struck portions of the SAC containing allegations against Defendants Dr. Eric Sullivan and Warden W. Muniz as improperly joined to this action and terminated them from this action.  Dkt. No. 137 at 6.

[3] Plaintiff submits over 400 pages of documents separated into Exhibits A through F.  Dkt. Nos. 158-1 through 158-7.  Exhibit A is labeled as "Re: Dr. Kim R. Kumar participation in a series of negligent events that culminated in deliberate indifference in my medical needs."  Dkt. No. 158-1 at 1 (consisting of 70 pages). Exhibit B is labeled as "Re: Dr. Bright, M. Darrin, participating in a series of negligent events that cause me harm; deliberate indifference to medical needs."  Dkt. No. 158-2 at 1 (consisting of 55 pages).  Exhibit C is labeled as "Re: Dr. Edward Miles Birdsong, malicious participation in series of negligent events that caused me harm; deliberate indifference to my medical needs."  Dkt. No. 158-3 at 1 (consisting of 28 pages).  Exhibit D is labeled as "Re: (PIC) T. A. Tran, Defend. Participation in a series of events that caused Plaintiff known harm; deliberate indifference to my serious RX pharmacological therapy medication/regiment care needs [*sic*]."  Dkt. No. 158-4 at 1

2

United States District Court
Northern District of California

Dkt. Nos. 158, 158-1 through 158-7.  Defendants filed a reply. Dkt. No. 159.

Defendants later filed a motion to resubmit the exhibits in support of their summary judgment motion attached to an amended declaration by Defendant Dr. Bright, authenticating the resubmitted medical records that are otherwise identical to those originally submitted.  Dkt. No. 167 at 2.  Good cause appearing, the motion is GRANTED.  The amended declaration of Defendant Bright and the authenticated exhibits newly submitted under Docket No. 167-1 shall supersede those previously filed with Defendants' summary judgment motion under Docket Nos. 149-1 and 149-2.

For the reasons stated below, Defendants' motion for summary judgment is **GRANTED**.

## DISCUSSION

I.   **Statement of Facts[4]**

  A.   **Plaintiff's Surgery in 2001 and Transfer to SVSP**

---

(consisting of 47 pages).  Exhibit E is labeled as "SVSP appeals exhausted in support of motion for opposition to Defend. summary of judgment [*sic*]."  Dkt. No. 158-5 at 1 (consisting of 78 pages); Dkt. No. 158-6 (consisting of 91 pages).  The label for Exhibit F is not legible, Dkt. No. 158-7 at 1, but it contains a copy of Defendants' response to Plaintiff's request for admissions, a copy of a guide from the Medical Board of California, excerpts from California's regulations and the state prison health care polices, and medical articles.  *Id.* at 2-77.

[4] The following facts are not disputed unless otherwise stated.

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff transferred to SVSP on February 14, 2007.  Bright Decl. ¶ 9[5]; Dkt. No. 167-1 at 10-17.  At that time, Plaintiff's transfer papers noted that Plaintiff had a post-cervical laminectomy and fusion of his cervical spine from C4-C7 in March 2001.  Bright Decl. ¶ 5; Dkt. No. 167-1 at 10.  Plaintiff had been issued a wheelchair due to a supposed spinal cord injury.  *Id.*

According to Plaintiff's declaration and the papers he submitted in support of his opposition, he underwent an unnecessary surgery at Mercy Hospital in Bakersfield by neurologist Dr. M. Rahimifar, not a party to this action, involving a metal disc implant in his spine in May 2006, the year before he was transferred to SVSP.  Martin Decl. ¶¶ 5-8; Dkt. No. 157 at 3-5; Dkt. No. 158-1 at 12-13.  The following month he suffered a fall, injuring his neck, and was again seen by Dr. Rahimifar on June 22, 2006.  Dkt. No. 158-1 at 14-15.  In August 2006, Dr. Rahimafar recommended a "flex/extension C-Spine surgery," which Plaintiff refused.  Dkt. No. 158-1 at 18-22.  Plaintiff claims that ever since the May 2006 surgery, he has been unable to use his upper or lower limbs for even a short period of time without suffering paralysis/numbness and agonizing intractable pain.  Martin Decl. ¶ 6; Dkt. No. 15 at 5-6.  According to the transfer papers, it was also noted that Plaintiff had again refused a

---

[5] Citations to Defendant Bright's amended declaration refer to Docket No. 167-1 at 1-8.  All other citations to Docket No. 167-1 are to the exhibits offered in support of Defendants' motion for summary judgment.

1

2

surgery in December 2006 for spinal cord decompression.  Dkt. No. 167-1 at 11.

3

4

5

6

7

8

9

At the time of his transfer to SVSP, Plaintiff was taking three pain medications but not taking any blood pressure medication.  Bright Decl. ¶ 10; Dkt. No. 167-1 at 11-12.  In March 2007, medical staff refilled Plaintiff's prescription for tramadol, a pain reliever.  *Id.*  In July 2007, Plaintiff was given atenolol, a blood pressure medication.  Bright Decl. ¶ 11; Dkt. No. 167-1 at 17.

10

11

12

13

14

15

16

17

18

19

20

21

On July 12, 2007, Plaintiff got into an altercation with another inmate; a Rules Violation Report was issued documenting the incident.  Dkt. No. 158-2 at 10.  The reporting officer stated that after an inmate began swinging at Plaintiff's face with clinched fists, Plaintiff stood up from his wheelchair and started swinging back with his own clinched fists.  *Id.*  On July 13, 2007, progress notes from a medical visited also stated that Plaintiff had gotten out of his wheelchair during an assault with another inmate on July 12, 2007.  Bright Decl. ¶ 5; Dkt. No. 167-1 at 15.[6]  Staff noted that Plaintiff was very flexible and ran about 10 feet during that fight.  *Id.*  Another medical staff documented witnessing Plaintiff run about 10 feet toward his

22

23

24

25

26

27

---

[6] In his declaration, Defendant Bright states that this incident occurred on January 3, 2017.  Bright Decl. ¶ 5.  However, a review of the medical records indicate that this incident took place on July 12, 2007.  Dkt. No. 167-1 at 15.  It also appears that the separate report of staff witnessing Plaintiff run about 10 feet took place on the same date, perhaps even based on the same incident.  *Id.* at 16.

28

United States District Court
Northern District of California

wheelchair and independently sitting down in it.  *Id.*; Dkt. No. 167-1 at 16.

In August 2007, his primary care physician at the time, who is not a party to this action, indicated that Plaintiff had borderline high blood pressure but did not prescribe any additional medications for it.  Bright Decl. ¶ 11; Dkt. No. 167-1 at 14.

According to the papers submitted by Plaintiff, he filed an inmate grievance (Log No. SVSP-A-07-03523) claiming to have an adverse reaction when taking medication under the "crush and float" policy.  Dkt. No. 158-1 at 25.  The second level appeal reviewed Plaintiff's health record and found that he had been taking prescribed medications tramadol three times a day in crush and float form throughout August and September 2007, and only reported experiencing a sore throat on occasion.  *Id.*  The director's level appeal also found that Plaintiff was seen various times throughout the period by the PCP and nurses, and none of the documentation of those visits demonstrated there was any clinical correlation to his claim that his medication was the cause of his sore throat.  *Id.* at 27.

## B.   Medical Care Since 2013

Between February 2013 and August 2013, Plaintiff either refused medications or failed to appear at the pill line to receive his medications on more than 100 occasions, which were prescribed by various physicians who are not a party to this action.  Bright Decl. ¶ 12; Dkt. No. 167-1 at 15-41.  In August 2013, Plaintiff also refused a vaccination, and refused to be tested for HIV, Hepatitis C, and Hepatitis B.  *Id.* ¶ 13; Dkt. No. 167-1 at

United States District Court
Northern District of California

21, 22.

Plaintiff filed a health care appeal form in July 2013, complaining about crushed medication.  Dkt. No. 158-2 at 28. On September 4, 2013, Defendant Bright prepared the response for the first level appeal, stating that it was denied because Plaintiff was being provided crushed and floated form medication pursuant to policy.  *Id.*

Plaintiff was also prescribed Tylenol #3 (with codeine) for the first time on December 13, 2013.  Bright Decl. ¶ 13.  The pharmacist, Defendant Tran, provided the medication in a crushed form.  Dkt. No. 158-4 at 17.  On January 21, 2014, staff began providing Plaintiff with Tylenol #3 in liquid form, then stopped on February 1, 2014.  *Id.*; Dkt. No. 167-1 at 42-44.

The medical records also include numerous occasions of Plaintiff's non-compliance with SVSP medical staff throughout 2014.  Bright Decl. ¶ 15.  On January 26, 2014, and March 25, 2014, Plaintiff refused to take his heart medication.  *Id.*; Dkt. No. 167-1 at 46.  In April 2014, he refused to take Elevil, an antidepressant, and Carbamazepine, which is used to treat pain. *Id.*; Dkt. No. 167-1 at 48-49.  In May 2014, Plaintiff refused to take his blood pressure medication, clonidine, even after being informed that such a refusal would increase the risk of a stroke and could lead to paralysis or death.  *Id.*; Dkt. No. 167-1 at 51-53. That same month, Plaintiff also refused to take any of his medication unless he received morphine.  *Id.*; Dkt. No. 167-1 at 54.  On May 14, 2014, Plaintiff saw Dr. S. Posson, a nonparty, to discuss an inmate grievance he had filed.  Dkt. No. 158-4 at 13.

7

United States District Court
Northern District of California

Dr. Posson noted that Plaintiff had a chronic sore throat but denied having any difficulty swallowing.  *Id.*  He received extended released morphine that same day.  Dkt. No. 158-2 at 32; Dkt. No. 158-4 at 16.  Then in June 2014, Plaintiff refused to sign for copies of certain medical records, and was uncooperative and argumentative with staff in July, September, and October 2014. Bright Decl. ¶ 16; Dkt. No. 167-1 at 55-58; Dkt. No. 158-1 at 56-57.  In November 2014, he refused to wear a mobility vest, which is used to identify inmates who are hearing or visually impaired in the event of an emergency.  *Id.*; Dkt. No. 167-1 at 59.  He also initially refused to go to an appointment with Dr. Posson on December 26, 2014, but later showed up at the clinic seeking a visit.  *Id.*; Dkt. No. 167-1 at 60-61; Dkt. No. 158-1 at 60-61.

Plaintiff continued to be uncooperative during 2015.  During July and August 2015, Plaintiff refused to take medication for pain and spasms on five separate occasions.  Bright Decl. ¶ 17; Dkt. No. 167-1 at 63-67.  On March 11, 2015, Defendant Birdsong noted that Plaintiff was belligerent and refusing to cooperate.  *Id.*; Dkt. No. 167-1 at 73.  On August 14, 2015, Defendant Birdsong met with Plaintiff to discuss his refusal to take his medication and noted that Plaintiff declined to take a flu shot and vaccinations for twinrix (a vaccine against hepatitis A and hepatitis B) and pneumonia.  *Id.*; Dkt. No. 167-1 at 71.  On August 15, 2015, Plaintiff was not cooperative during a telemedicine consult with a psychiatrist, a nonparty.  *Id.*; Dkt.

No. 167-1 at 70.[7]  On December 11, 2015, Plaintiff became belligerent while interacting with Dr. Carl Bourne, a nonparty, and called him a "liar."  *Id.*; Dkt. No. 167-1 at 68.

Plaintiff's noncompliance continued during 2016.  On May 3, 2016, Defendant Dr. Villa discontinued the extended release morphine and ordered immediate release morphine instead. Bright Decl. ¶ 19; Dkt. No. 167-1 at 107-108.  However, Dr. Villa discontinued the immediate release morphine on May 13, 2016, because Plaintiff refused to take it.  *Id.*; Dkt. No. 167-1 at 104.  Then followed further instances of noncompliance with medical staff: on June 27, 2016, Plaintiff refused to take immediate release morphine for pain, Bright Decl. ¶ 20, Dkt. No. 167-1 at 103; on June 30, 2016, he refused to sign a document so that he could receive copies of his medical records which he had requested, *id.*, Dkt. No. 167-1 at 101-102; on July 11, 2016, Plaintiff demanded that staff provide him with early release morphine and again refused immediate release morphine and

---

[7] Defendants also assert that on September 21, 2015, Plaintiff refused an eye exam for glaucoma.  Bright Decl. ¶ 17; Dkt. No. 167-1 at 69.  Plaintiff objects to the admission of this eye exam into evidence, asserting that the Court had ordered no vision care issues could be addressed in this action.  Martin Decl. ¶ 13.  That prohibition, however, was on Plaintiff, to limit the breadth of this action to his pain management issues.  Dkt. No. 137 at 6. Defendants submitted this evidence as another example of Plaintiff's persistent non-compliance in response to their attempts to provide treatment.  Even so, the Court will sustain Plaintiff's objection and disregard this evidence as there is plenty of other evidence to support Defendants' argument regarding Plaintiff's non-compliance.

gabapentin, *id.*, Dkt. No. 167-1 at 100; he refused to go to a medical appointment on July 29, 2016, *id.*, Dkt. No. 167-1 at 99; on August 22, 2016, he refused his pain medications and demanded that Defendant Birdsong provide him with opioids *id.*, Dkt. No. 167-1 at 98.  On August 25, 2016, Plaintiff filed an inmate grievance against Defendant Villa for discontinuing his immediate release morphine.  Dkt. No. 167-1 at 97.

On October 12, 2016, Plaintiff had an MRI of the cervical and thoracic spine that showed no significant disease.  Bright Decl. ¶ 6; Dkt. No. 167-1 at 91; Dkt. No. 158-2 at 38-41.  That same month, Plaintiff stated that he would no longer work with medical staff and would "just deal with the courts from now on." *Id.* ¶ 20; Dkt. No. 167-1 at 96.  On December 1, 2016, he was examined by Dr. K. Kaur, not a party to this action, who noted that Plaintiff informed him that he could not take crushed/float medication "due to dysphagia, since 2002." Dkt. No. 167-1 at 94.  However, Dr. Kaur noted that after reviewing Plaintiff's records, he did not find "any limitations as far as dysphagia with crushed liquids" and that Plaintiff was "eating normal." *Id.* at 95.

Throughout 2016 and 2017, Plaintiff was given Tylenol three times per day for pain.  Bright Decl. ¶ 21; Dkt. No. 167-1 at 92.

On January 20, 2017, Plaintiff had a telemedicine consult with Dr. D. Ramberg, to review his current thoracic and cervical MRI.  Dkt. No. 158-2 at 42-43.  Dr. Ramberg noted that another surgery to address Plaintiff's back complaints would require a "major operation with significant risks and not a very probable

result that [Plaintiff] would be happy with." *Id.* at 43.  Dr.
Ramberg opined, "I doubt that his complaints would improve." *Id.*

On March 9, 2017, Plaintiff was again seen by Dr. Kaur,
who noted that Plaintiff sought liquid morphine and refusing to
take crush and float meds because of dysphagia.  Dkt. No. 158-2
at 47.  Dr. Kaur stated that Plaintiff had "unfounded claims which
medically are not substantiated, such as dysphagia to crush &
float medications although he tolerates regular diet." *Id.*

Plaintiff filed this action on March 28, 2017.  Dkt. No. 1.

## C.   <u>Plaintiff's Claims</u>

This action is proceeding only on Eighth Amendment
deliberate indifference claims based on the following allegations
in the SAC involving the treatment for Plaintiff's chronic pain; it
does not include the improperly joined claims that were stricken
from this action.  Dkt. No. 137 at 6.  Plaintiff claims that in
February 2007, he was given the wrong blood pressure medicine
and that another pain medication, tramadol, was improperly
cancelled.  Dkt. No. 129 at 11-13.  Plaintiff claims that Defendant
Tran was deliberately indifferent to him from 2007 through 2015,
and that he has been falsely labeled as a "non-compliant" patient.
*Id.* at 13-14.  Plaintiff claims that at some point in 2013, he was
given Tylenol with codeine but was later given a different drug
which tasted strange.  *Id.* at 17-18.  Plaintiff claims that his
prescription for extended release morphine was cancelled in 2016
and replaced with "crush-float morphine" which is inadequate.
*Id.* at 22-23.  Lastly, Plaintiff claims that he was denied pain

medication, a CAT scan, and surgeries during 2016 and 2017.  *Id.* at 23-30.

## II.  <u>Summary Judgment</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving

party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp*., 477 U.S. at 324 (citations omitted); Fed. R. Civ. P. 56(e). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp*., 477 U.S. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

United States District Court
Northern District of California

1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id*. at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id*. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.   Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."  *Id*.  The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

condition that significantly affects an individual's daily activities;
or the existence of chronic and substantial pain.  *McGuckin v.
Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on
other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133,
1136 (9th Cir. 1997) (en banc).

A prison official is deliberately indifferent if he knows that a
prisoner faces a substantial risk of serious harm and disregards
that risk by failing to take reasonable steps to abate it.  *See
Farmer*, 511 U.S. at 837.  The official must both know of "facts
from which the inference could be drawn" that an excessive risk
of harm exists, and he must actually draw that inference.  *Id*.  If a
prison official should have been aware of the risk, but was not,
then the official has not violated the Eighth Amendment, no
matter how severe the risk.  *Gibson v. County of Washoe*, 290
F.3d 1175, 1188 (9th Cir. 2002).

A claim of medical malpractice or negligence is insufficient
to make out a violation of the Eighth Amendment.  *See Toguchi
v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004); *Hallett v.
Morgan*, 296 F.3d 732, 744 (9th Cir. 2002);  *Franklin v. Oregon*,
662 F.2d 1337, 1344 (9th Cir. 1981); *see, e.g.*, *Frost v. Agnos*,
152 F.3d 1124, 1130 (9th Cir. 1998) (finding no merit in claims
stemming from alleged delays in administering pain medication,
treating broken nose and providing replacement crutch, because
claims did not amount to more than negligence); *McGuckin*, 974
F.2d at 1059 (mere negligence in diagnosing or treating a medical
condition, without more, does not violate a prisoner's 8th
Amendment rights); *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th

15

Cir. 1990) (repeatedly failing to satisfy requests for aspirins and antacids to alleviate headaches, nausea and pains is not constitutional violation; isolated occurrences of neglect may constitute grounds for medical malpractice but do not rise to level of unnecessary and wanton infliction of pain).

### B.   Analysis

This action is based on the claim regarding treatment for Plaintiff's chronic pain related to certain longstanding injuries to his neck and back, and the alleged failure to provide corrective surgeries to address that pain.  Dkt. No. 137 at 6.  With regards to this treatment, Plaintiff claims the following; (1) in February 2007, he was given the wrong blood pressure medicine and that another pain medication, tramadol, was improperly cancelled; (2) Defendant Tran was deliberately indifferent to him from 2007 through 2015, and that he has been falsely labeled as a "non-compliant" patient; (3) at some point in 2013, he was given Tylenol with codeine but was later given a different drug which tasted strange; (4) his extended release morphine was cancelled in 2016 and replaced with "crush-float morphine" which is inadequate; and (5) he was denied pain medication, a CAT scan, and surgeries during 2016 and 2017.  *See supra* at 11.

Defendants do not dispute that Plaintiff's pain issues in his neck and back constitute a serious medical issue.  Dkt. No. 149 at 12.  Rather, they assert that they were not deliberately indifferent to his needs.  *Id.*  Defendants assert that the evidence establishes that Plaintiff's medical needs have not been ignored at SVSP, and that officials have not improperly declined to provide treatment

1
2
3
4
5
6
7
8
9

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

or surgeries. *Id.* at 13; Bright Decl. ¶ 7.  With respect to Plaintiff's claim that he needs surgery, Defendants assert that there are no physical findings in his medical exams or imaging that support his request for surgery. *Id.*  Defendants assert that the biggest challenge that medical staff have faced in treating Plaintiff appropriately is his continuous and long history of refusing medications, treatments, and evaluations, and of being noncompliant with recommended treatments and medications. *Id.*

Furthermore, Defendants assert that although Plaintiff insists on receiving opioid medications, there is no medical evidence establishing that opioids are superior to nonsteroidal anti-inflammatory drugs (NSAIDS) or Tylenol in treating pain or improving function in connection with chronic neck or back pain. Dkt. No. 149 at 13.  Defendants also dispute Plaintiff's claim that at least since 2002 he cannot take "crush and float" medication because of dysphagia, the medical term for swallowing difficulties, because there is no medical evidence that he has any limitations with regard to swallowing. *Id.*  Accordingly, Defendants assert that there is no evidence to support Plaintiff's contention that he cannot ingest "crush and float" or "immediate release" morphine. *Id.*  With respect to the allegation that he was denied pain medication during 2016 and 2017, Defendants assert that he was given Tylenol three times per day for pain throughout that time. *Id.* at 15; Bright Decl. ¶ 21.  When Plaintiff was offered other medications, he refused them. *Id.*  Despite Plaintiff's belligerence and noncompliance with staff, Defendants

17

assert that they consistently attempted to treat Plaintiff's pain with appropriate medications and concluded that he does not need surgery.

With respect to the allegation that he was given wrong blood pressure medication in February 2007, and that another pain medication, tramadol, was improperly cancelled during that period, Defendants assert it is meritless.  Dkt. No. 149 at 13. Defendants assert that the medical records indicate that Plaintiff was not taking blood pressure medication when he was transferred to SVSP in 2007.  *Id.*  Plaintiff was first given atenolol, a blood pressure medication, on July 12, 2007.  *Id.*  In addition, Defendants assert that medical staff refilled Plaintiff's prescription for tramadol in March 2007.  *Id.* at 14.

With regard to the allegation that Defendant Tran was deliberately indifferent to Plaintiff and that he was falsely labeled as a "non-compliant" patient, Defendants assert that there were numerous instances in which Plaintiff was noncompliant with medical staff from 2013 through 2016.  Dkt. No. 149 at 14-15.

With respect to the allegation that Plaintiff was provided Tylenol with codeine at some point in 2013, but was later given a different drug which tasted strange, Defendants assert that their actions during that period did not violate the Eighth Amendment. Dkt. No. 149 at 15.  Defendants assert that the medical records show that Plaintiff was first prescribed Tylenol #3 on December 13, 2014.  *Id*.  On January 21, 2014, staff began providing him with liquid Tylenol #3, which likely tasted strange to Plaintiff. *Id.*  Staff stopped providing Plaintiff with liquid Tylenol #3 on

February 1, 2014.  *Id.*  Defendants assert that these actions were part of their ongoing efforts to treat Plaintiff's pain.

In opposition, Plaintiff asserts that Defendants have violated his Eighth Amendment rights with their "excessive denial of pain management medicine," failure to treat his "pre-existing neurological and orthopedic damages to prevent worsening, and failure to place him in a medical facility conducive to his pre-existing and worsening condition.  Dkt. No. 157 at 3.  Plaintiff asserts that there are no records to support a 2001 spinal surgery contrary to Defendant Bright's declaration.  *Id.* at 6.  Plaintiff asserts that his exhibits "A thru F" show that he has serious neurological and orthopedic injuries to warn of medical treatment or need for corrective surgeries.  *Id.* at 9.  In his declaration, Plaintiff recounts problems with his neck and back since 2003 and a damaging surgery in May 2006.  Martin Decl. ¶¶ 4-9, Dkt. No. 158.  Plaintiff asserts generally that there remain genuine issues of material facts and that "each Defendant knew and disregarded the laws to maliciously inflict harm and to seek [Plaintiff's] demise."  *Id.* at ¶ 10.  Plaintiff asserts that Defendant Bright has failed "to offer any law or approved state license for the unlawful practice of crush-float drug dispensed… without consent."  *Id.* at ¶ 11.  He asserts that he had a right to withhold consent to taking crush-float medication, and that he cannot be deemed non-compliant for withholding consent.  *Id.* at ¶14.  Plaintiff asserts that Defendants are focusing on covering up and concealing "the thoracic spinal damages that [have] been systemically misdiagnosed and undertreated by each one."  *Id.* at

19

¶ 19.

In reply, Defendants assert that Plaintiff's opposition is largely incoherent and fails to address any of their contentions. Dkt. No. 159 at 2.  Defendants assert that the evidence they submit establishes that Plaintiff does not have a spinal cord injury and does not need surgery.  *Id.*; *id.* at 3.  They also assert that there is no evidence that Plaintiff has any limitations in swallowing that would prevent him from ingesting "crust and float" medication.  *Id.*  Rather, Defendants assert, the evidence indicates that medical staff at SVSP have consistently attempted to provide appropriate care for Plaintiff's pain despite his belligerence and noncompliance, and that their biggest obstacle in treating Plaintiff properly has been his continuous history of refusing medications, treatments, and evaluations, and being noncompliant with recommended treatments and medications. *Id.*  They assert, therefore, that Plaintiff's Eighth Amendment claim against them must fail.  *Id.* at 5.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds there exists no genuine dispute as to any material fact relating to Plaintiff's claim of deliberate indifference against Defendants.  The evidence submitted by Defendants establishes that there is an absence of evidence to support Plaintiff's claim that Defendants provided constitutionally deficient treatment for his chronic pain, including the failure to provide corrective surgeries.  Rather, his medical records and inmate grievances show that Plaintiff's main objections to the treatment provided by Defendants was their decision to provide medication in crush-

20

United States District Court
Northern District of California

float form and switching him from extended relief morphine to immediate relief morphine. *See supra* at 7, 8, 9, 10, 11. He repeatedly asserted throughout 2013 through 2017 that he could not take medication in crush-float form because he has trouble swallowing due to dysphagia. *Id*. However, the various treating physicians, both parties and nonparties, found no evidence to substantiate this claim. *Id.* In fact, one appeal decision noted that during August and September 2007, Plaintiff was able to take tramadol three times a day in crush and float form and only reported experiencing a sore throat on occasion, with no apparent correlation to the form of his medication. *Id.* at 6. Plaintiff's assertion in this regard have also been inconsistent, as during one visit on May 14, 2014, he stated to Dr. Posson that although he had a chronic sore throat, he had no difficulty swallowing. *Id.* at 7-8. Furthermore, doctors noted that despite his claim of dysphagia, Plaintiff was still eating normally and tolerating a regular diet. *Id.* at 10, 11. The evidence shows that Defendants were aware that Plaintiff was able to swallow his medication in crush-float form and that his ability to eat a normal diet contradicted any indication that he had dysphagia. Accordingly, it cannot be said that they knew of an excessive risk of harm to Plaintiff if they continued to prescribe crush and float form where Plaintiff was able to ingest it but simply chose not to. The same is true of the extended release morphine versus the immediate release morphine: Defendants provided morphine for his pain which Plaintiff rejected because of the prescribed form of the medication. The evidence clearly shows that the only obstacle to

21

United States District Court
Northern District of California

Plaintiff receiving treatment for his chronic pain was his own conduct, *i.e.*, failing to show up for pill call and refusing to take his medication, because he essentially disagreed with Defendants' chosen course of treatment of giving medication in crush and float form or as extended release or immediate release. However, this mere difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi*, 391 F.3d at 1058; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Therefore, it cannot be said that Defendants acted with deliberate indifference to Plaintiff's pain when they continuously prescribed medication which he repeatedly refused.

Furthermore, Defendants have also demonstrated the absence of a genuine issue of material fact with respect to Plaintiff's claim that surgery should have been provided to treat his pain. Defendants assert that there are no physical findings in Plaintiff's medical exams or imaging to support his request for surgery. *See supra* at 16-17. A review of the medical records submitted by both parties reveals no evidence that surgery was ever recommended to alleviate Plaintiff's chronic pain but then denied. Rather, Plaintiff states that he had one damaging surgery in May 2006 which caused injuries to his limbs resulting in either "paralysis/numbness" or "agonizing intractable pain," and when the same surgeon recommended another surgery a few months later, Plaintiff refused it. *Id.* at 4. The records also indicate that Plaintiff again refused surgery in December 2006. *Id.* This evidence shows that Plaintiff did not desire surgery at the time he

22

arrived at SVSP.  The only mention of surgery thereafter appears in the medical records submitted by Plaintiff from January 2017, when he had a telemedicine consult with Dr. Ramberg.  *Id.* at 10. Dr. Ramberg's conclusion at that time was that another surgery to address Plaintiff's back complaints would require a "major operation with significant risks" which was not likely to result in any change that Plaintiff would be happy with.  *Id.*  Dr. Ramberg opined that he doubted that Plaintiff's complaints would improve. *Id.*  This opinion by a nonparty does indicates that surgery was not a viable option to alleviate Plaintiff's chronic pain such that Defendants' denial of the surgery cannot be considered deliberate indifference.

To refute Defendants' showing of an absence of a genuine issue of material fact, Plaintiff must designate specific facts showing there is a genuine issue for trial.  *See Celotex Corp.*, 477 U.S. at 324.  Plaintiff has failed to do so. First of all, although Plaintiff rejects Defendant Bright's assertion that he had surgery in March 2001 as indicated by his transfer papers to SVSP, *see supra* at 14, this dispute is not over a material fact since a surgery that did or did not take place nearly twenty years ago while incarcerated at a different institution is not relevant on the issue of whether SVSP Defendants denied Plaintiff treatment for his chronic pain as he claims.  Secondly, Plaintiff asserts that he did not give "consent" to the type of medication prescribed and that he should not be deemed noncompliant thereby.  *Id.*  However, his decision to reject otherwise appropriately prescribed pain medication is not evidence that Defendants acted with deliberate

indifference with respect to his pain management where they were unaware of any hindrance to his ability to ingest the medication.  The risk of harm to Plaintiff was created by his own refusal to take the medication as prescribed, not by any action on the part of Defendants.

In support of his opposition, Plaintiff submitted over 400 pages of documents separated into Exhibits A through F, but fails to explain the relevancy of much of these papers.  Dkt. Nos. 158-1 through 158-7.  Plaintiff refers to these exhibits in general as "medical records, documents, appeals, policies, statutes, regulations, CDCR memorandum, letters from state experts, state and federal agencies, actions under president[ial] authority, and local state agencies acting under governor authority and state and federal class action court orders (Plata/Armstrong/Clark)." Martin Decl. ¶ 9, Dkt. No. 158 at 5-6.  Other than being grouped into 6 separate exhibits with a general description on the first page, the documents in each exhibit are presented in no apparent order.  *See supra* at 2, fn. 3.  Some documents included in one exhibit are also duplicated in another.  *See*, *e.g.*, Dkt. Nos. 158-2 at 32, 158-4 at 16.  Plaintiff's submission of these documents is also inadequate to establish deliberate indifference because he describes some of the exhibits as containing evidence of a "series of negligent events."  *See supra* at 2, fn. 3.  Negligence is insufficient to make out a violation of the Eighth Amendment. *See Toguchi*, 391 F.3d at 1060.  Moreover, Plaintiff provides no description of the allegedly negligent events contained in the exhibits nor explains how those events establish that Defendants

knew that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837.

Without any specific explanation from Plaintiff, the Court cannot determine the relevancy of much of these documents. *See* Fed. R. Evid. 401, 402. Plaintiff makes very little reference to specific documents in the exhibits in either his opposition brief or his declaration to support his arguments and assertions; rather, he frequently refers to the exhibits "A thru F" as a whole or to an entire exhibit or lengthy pages therein. *See, e.g.*, Dkt. No. 157 at 4, 7, 9, 10; Dkt. No. 158 at 10. Therefore, the Court has only considered the medical records and inmate appeals therein that contain clearly relevant facts pertaining to the issues in this matter as included in the statement of facts above. *See supra* at 2-8. Otherwise, for lack of any specific explanation or argument from Plaintiff establishing the relevancy of these documents, or their authenticity, the remainder of his papers cannot be considered evidence. *See* Fed. R. Evid. 901(a).

Based on the foregoing, Plaintiff has failed in opposition to meet his burden of pointing to specific facts showing that there is a genuine issue for trial or produce evidence from which a jury could reasonably render a verdict in Plaintiff's favor. *See Liberty Lobby*, 477 U.S. at 252.

Defendants have also shown that there is no genuine dispute as to any material fact with respect to the remaining allegations regarding Plaintiff's treatment. *See supra* at 12. First with respect to the claim that he was given the wrong blood pressure

medicine in February 2007, the evidence shows that Plaintiff was not taking blood pressure medication when he was transferred to SVSP in February 2007. *See supra* at 3. He was not prescribed blood pressure medication atenolol until July 2007. *Id.* at 4, 13. Accordingly, this claim is without any factual basis. Nor is there any factual basis for Plaintiff's claim that Defendants improperly cancelled his prescription for tramadol as the medical records show that the prescription was refilled in March 2007. *Id.* Plaintiff offers no evidence in opposition to establish a dispute over this fact.

With respect to the claim that Defendant Tran was deliberately indifferent for falsely labelling Plaintiff as "non-compliant," Defendants have demonstrated that the medical records contain numerous instances of Plaintiff's non-compliance from 2013 through 2016. *See supra* at 3-11. These instances include repeated failures to appear at the pill line to receive his medication, refusing vaccinations or to be tested for various diseases, refusals to take various medications for his heart, antidepressants, blood pressure, and pain management, being belligerent and argumentative at clinical visits, and refusals to go to medical appointments. *Id.* Accordingly, there is no genuine dispute that Plaintiff was actively non-compliant during the relevant time period.

Lastly, with respect to the claim that Plaintiff was given Tylenol with codeine in 2013 but was later given a different drug which tasted strange, Defendants have provided an explanation which Plaintiff does not dispute in opposition. *See supra* at 18.

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

This incident regarding the strange tasting medication contains no indication that Defendants were aware of an excessive risk to Plaintiff which they disregarded.  As the undisputed facts show, the medicine in liquid form was shortly discontinued.  *Id.* at 5.  Accordingly, Defendants have shown the absence of a genuine issue of material fact with respect to this claim.

Based on the undisputed facts, Defendants have shown there is an absence of a genuine dispute of material fact with respect to the Eighth Amendment claims against them.  *See Celotex Corp.*, 477 U.S. at 323.  Plaintiff has failed to meet his burden of identifying with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279, or submit evidence from which a jury could reasonably render a verdict in his favor, *In re Oracle Corporation Securities Litigation*, 627 F.3d at 387.  Accordingly, Defendants are entitled to summary judgment on all the claims against them.  *See Celotex Corp.*, 477 U.S. at 323.[8]

## CONCLUSION

For the reasons stated above, Defendants Dr. Kim R. Kumar, Dr. Darrin M. Bright, Tuan Anh Tran, Dr. Edward Miles Birdsong, and Dr. Jennifer Villa's motion for summary judgment is **GRANTED**.  Dkt. No. 149.  The Eighth Amendment

---

[8] Because the Court finds no constitutional violation, it is not necessary to address Defendants' remaining arguments regarding punitive damages and qualified immunity.  Dkt. No. 149 at 16-19.

deliberate indifference claims against them are **DISMISSED** with prejudice.

 This order terminates Docket Nos. 149 and 167.

 The Clerk shall close the file.

 **IT IS SO ORDERED.**

Dated:  _December 21, 2020_

BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.17\01690Martin_grant-MSJ